My name is Timothy Wickmer and I represent the petitioner in this case, Alvin Castillo-Gutierrez. Mr. Castillo asked the Court to vacate the decision of the Board of Immigration Appeals ordering his removal and to remand this case to the Board of Immigration Appeals for a full consideration on the merits of political asylum, withholding of removal, and relief under the Convention Against Torture. In the alternative, we would ask this Court to grant relief under the Convention Against Torture, which is a mandatory form of relief. Simply stated, the Board erred in finding that Mr. Castillo did not have an objectively reasonable fear of return to Nicaragua. It's important to understand in this case that we have a situation where the immigration judge confirmed by the Board found Mr. Castillo's testimony credible. And we know from Matter of YB 21 INN Decision 1136 BIA 1998 that an applicant's testimony is, if it's believable, consistent, and sufficiently detailed, suffices to fulfill a burden of proof. When it comes to objectively reasonable fear, this Court has determined in Paremponathan that it just simply must have a basis in reality and must neither be irrational nor so speculative or general as to lack credibility. Now in this case, again going back to the Matter of YB in the Immigration Court, they said, and this is very important, in other words, an articulation of fear, which we have here, coupled with testimony, here deemed credible, concerning events or circumstances that are plausible in light of known documented conditions constitutes both subjective and objective elements of a persecution claim and can satisfy the alien's burden. The INS versus Cardozo-Fonseca established that you only have to show a 10% chance of persecution in going back. So that if you have a situation where this Court finds that nine times out of ten, Mr. Carago would be just fine. He wins. In which case is that that you say cites the 10%? INS versus Cardozo-Fonseca, U.S. Supreme Court, it's 480 U.S. 421, 1987. And here we have more than merely credible testimony. Now in the addendum to our brief on addendum page 8, the judge finds Mr. Castillo credible. Also on A10, it assumes that he has a subjective fear. It's already found. The BIA does not disturb this. Also, in addition to this credible testimony, we have a lot of documentary support both in terms of eyewitness testimony and documents and in terms of the known country conditions which the BIA largely ignores. The BIA really didn't do its job here, Your Honors, because this case could have been resolved on other bases as well. But the only ground that's at issue here is, is the fear objectively reasonable? Basis and reality. Neither irrational nor speculative. Okay, so in the documentary support, we have a testament, we have an affidavit of an eyewitness to the murder of petitioner's brother, Noel, who went to visit a niece in the hospital and was beaten to death by police. We know the name of the lead police officer who did it. The name is Freddy Huetes, H-U-E-T-E-S. We know that that police officer issued a threat against the witness, saying that if you say anything, that something bad could happen to you. The government wants to use that as evidence and the board just kind of dismisses it because nothing ever happened to him. Well, he never disobeyed the order not to say anything. The government in their brief wants to point to and say, well, submitting this affidavit in immigration court in support of Mr. Castillo is a way of saying something. But immigration proceedings, political asylum, are confidential. And there's no way that that should get back to the home country. There's nothing public that the eyewitness has done in order to violate the prescription. What about his brother, Orlando? As I understand it, he did investigate the death, did complain to the police. He filed a police report and wrote a letter to a human rights organization. That is actually located in the record at 222 and 234, if my eyes don't deceive me. But it's a mere police report. Even based upon a mere report, it is the credible testimony taken as true by the immigration judge and not disturbed on appeal that Orlando was being sought by the police. They have not yet found him. There's been no harm yet, but he is under, the police are looking for him. It is the testimony, uncontroverted and deemed as true by the immigration judge and the board that Mr. Gutierrez, when he goes back to Nicaragua, is duty bound to make an issue of this and his brother. So, if it seems as though, well, what if he just goes and keeps his mouth shut? His testimony is that he would not do that, and that testimony was believed. That is the record before you. This is not the situation of Orlando who files a mere report. Nothing happens, but they're still looking for him. He would make sure that this case was taken to its conclusion. We have a copy of the police report in the record. We have a hospital report from the niece whom Noel, the brother that was killed, was visiting. There's all kinds of corroborating evidence of the facts that took place. So, the IJ found that there wasn't a nexus, but the BIA didn't reach that. It's not before this court. Is the harm based upon one of the protected grounds? That's not before you today. All that is before you today is, would a reasonable person think that there's a one in ten chance they could be persecuted if they go back and try to find justice for his brother's killer? If we look at the country condition report that was used in this case, the BIA merely points to one incident involving threatening a reporter who was looking into the death of a former contractor, but there's much, much more. This was allowed into the record. This is from the U.S. State Department. Significant human rights abuses occur, including unlawful killings by security forces. Page 161. Impunity was a widespread problem, according to our State Department. Page 161. Page 162, security forces. This was the 2011 country report that was at issue in the trial. Security forces killed nine persons during that year, four of which, at least, were politically motivated. Police arbitrarily arrested and detained and tortured four persons, three of whom were from Petitioner's hometown. That's at page 163 in the record. There were threats and violence towards the press on page 171, and finally, there is impunity for police corruption, page 164. This is not merely one threat to the journalist. This is known country conditions reports, known documented conditions, constitutes objective and subjective parts of the claim, and meets the burden of proof. And remember, too, for Convention Against Torture Relief, that we don't need to show any nexus. It doesn't matter why he would be persecuted or tortured, as long as the government does the torturing. Here, he fears the police. The police is an arm of the government. The government, in the brief, I think, mentioned something about, like, from time to time, the government looks in on these kind of cases, and that's some evidence that they don't have acquiescence. But, you know, you only have to show more than 50 percent, and it is the police itself. I think if any, the substantial evidence standard, that's the standard here. No reasonable fact finder who, when all the following are present, credible testimony, known country conditions, documentary evidence, eyewitness testimony, plus following the law laid out in Parent Ponathon 310F3-597, following a matter of YB, and following INS v. Cardozo Fonseca. No reasonable fact finder could fail to find that there's an objective fear in this case. As such, if we're considering political asylum, it must go back to the board. I'm into my rebuttal time. I'd be happy to answer questions or to reserve. Thank you. Ms. Chapman. Good morning. May it please the Court. My name's Elizabeth Chapman. I represent the Attorney General. The record in this case does not compel the conclusion that Mr. Castillo faces an objectively reasonable fear of harm if he returns to Nicaragua and seeks justice for his brother's death. The record here first shows that Mr. Castillo's brother took significant steps to seek justice by filing a formal police report in which he specifically names the police officer who allegedly killed his brother, and by filing a report with the Government Human Rights Organization. The government nor the police, neither of them, took any actions to harm or even to threaten Mr. Castillo's brother, Orlando. Now, Mr. Wishman says that's not correct, that they're actually actively looking for him. Yes. What's the evidence? Mr. Castillo testified that they are looking to speak to him. The fact that they are looking to speak to him does not mean that they are looking to harm him. He filed a police report with the police. It's entirely reasonable that they would be looking to speak to him. And furthermore, if you look at the police reports in the record on 234 of the record, it provides his phone number, it provides his address. If the police were looking to speak to Mr. Castillo's brother, they have exactly how to contact him. The fact of the matter is they haven't contacted him. They haven't threatened him, and they haven't harmed him. Has he left the area? Orlando? Yes. I mean, is he, is the reason they can't, they may have left, he may have left a phone number and an address, but has he relocated to someplace else in Nicaragua? No. The record demonstrates that he lives three miles from the center of town, and they haven't sought to find him, to seek him, to speak to him in the four years that have passed. The fact that they haven't threatened or harmed his brother supports the conclusion that they wouldn't threaten or harm Mr. Castillo if he continues the investigation. When was the police report filed? You know, I don't have the date. I can look at the report, but I don't have the date off the top of my head. I believe it might be on... Do you have a round figure of the distance from the filing of that to the seeking of asylum? I believe it occurred around 2011, but I could double-check the record for you. Another factor in support of the agency's conclusion in this case is the fact that none of the background evidence compels the conclusion that he will be persecuted or harmed if he seeks justice for his brother's death. The background evidence actually refutes this claim. We have in there that in 2011, this is in the same Department of State report, in 2011 there were approximately 1,800 complaints against the police, which led to the dismissal of 180 police officers. So this demonstrates that in Nicaragua, the public is not afraid to seek justice or to pursue complaints against the police. And it also demonstrates that the police does not turn a blind eye to any complaints against the police, any investigations of public corruption. And importantly, the report does not mention one instance of an individual facing persecution or retaliation from the police for filing a report. The third factor in support of the agency's determination here is the fact that Miguel, who is the family friend, he disobeyed the police by telling the family about what he saw, whether or not it was a public disclosure of what he saw or a private, but he told Orlando, and Orlando then filed a police report. Miguel disobeyed the police, and he did not receive any harm or any further threats. The one threat was just an empty threat. And this one empty threat against Miguel does not compel the conclusion that Mr. Castillo will face harm if he attempts to seek justice for his brother's death. Simply put, Mr. Castillo's claim is speculative. Have there been threats made against the petitioner directly? No. There's no threats made against Mr. Castillo. Mr. Castillo's case is speculative. It's speculative that if he returns to Nicaragua, he will take actions that will somehow be more significant and more meaningful than the actions that his brother took. It's speculative that these actions will draw the attention of the police four years after the death of his brother. It's speculative that if it does draw the attention of the police, the police will retaliate when they haven't retaliated against his brother for taking actions. And it's also speculative that any retaliation will rise to the level of persecution. The entire claim here is speculative, and a well-founded fear of persecution must be based on more than mere speculation. If there are no further questions, I'd like to sum up. There's nothing in the record that compels the conclusion that Mr. Castillo faces a well-founded fear of persecution in Nicaragua if he returns. And for a CAT claim, it would require a higher burden of proof, which is that it's more likely than not. There's nothing in the record that compels either of these conclusions. Therefore, the court should not disturb the agency's finding in this case. How much time does Mr. Wishman have left? One minute and 48 seconds, Your Honor. Thank you. Judge Murphy, just recalling back to a case we argued in front of you, I don't have the citation, but the name is Brasich, B-R-A-C-I-C, versus Holder. And in that case, the alien won asylum because their asylum claim was filed immediately. They took action immediately after the threat. In this case, the testimony is obviously credible because Mr. Castillo did not apply for asylum immediately, but only after his brother was killed and he became afraid, and he did so very shortly thereafter. The best that the government can do in this case is say, well, they haven't found Orlando yet. Orlando filed a police report in 2012. It was a little bit after the fact, and the point was that there was no autopsy done. These police officers have not been punished to this day. In fact, Orlando's just the- When did the killing take place? The killing took place in May of 2011, and the threat to Miguel was immediate. The petitioner here has been in the U.S. since 2006? 2006, yes. And he didn't apply for asylum until after that. He had come here looking for a better life, as many immigrants do. When did he become removable? He was removable before that. I think he was already in removal when the killing took place. I'm not sure of the exact time, but there was quite some time after he entered. He entered without inspection, so he was removable immediately. I will say that with regard to speculative, you cannot take testimony that's deemed credible and this story that is deemed credible by the IAJ and the BIA with these country conditions, page 161 to 177, and consider that speculative. Our own government state department says police impunity is a widespread problem in Nicaragua. The fact that some people may have been removed from time to time doesn't contradict their own statement. Does the record show that the petitioner has taken actions from the U.S. to address issues in Nicaragua with respect to his- He has not been able to do so, and it would be very difficult, effectively, to do that, to make the requisite complaints and hire a lawyer to bring an action. I'm out of time. Yes, you can finish. To take the requisite action to make an effective pursuit of justice in Nicaragua would require him to be there. Until this case is resolved, of course, he couldn't leave anyway. He would self-deport. So we're waiting for a determination. And again, the BIA has not disposed of all of the issues in the case. This case has to go back because they're all kind of intertwined, and they basically just punted some other very important issues. And I think the interest of justice would indicate it should be sent back. Thank you. Thank you both. We'll go on to the last argument, please. Torres-Balderos v. Lynch. Thank you. It's me again. Welcome back.  May it please the Court.